# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE D. SELVICK,<br><br>    Plaintiff,<br><br>    v.<br><br>PAUL D. BRAZELTON, et al.,<br><br>    Defendants. | Case No.  1:14-cv-00363-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS MOTIONS TO DISMISS<br><br>(ECF Nos. 25, 30, 31, 32)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently before the Court is a motion to dismiss filed by Defendants Jeffery A. Beard, Edmund G. Brown, Matthew Cate, and the State of California, and a motion to dismiss filed by Defendants Felix Igbinosa and Dwight Winslow.  Having considered the moving papers, as well as the Court's file, the Court issues the following findings and recommendations recommending granting both motions to dismiss.

**I.**

**PROCEDURAL HISTORY**

Plaintiff Dale D. Selvick filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 11, 2014, against Defendants Paul D. Brazelton, Pleasant Valley State Prison ("PVSP"), Jeffrey A. Beard, Matthew Cate, Arnold Schwarzenegger, Edmund G. Brown, Dwight Winslow, Felix Igbinosa, James Yates, Ironwood State Prison ("ISP"), and the State of California alleging deliberate indifference in violation of the Eighth Amendment and premises liability under

1

California law.[1] On August 18, 2014 Defendants Beard, Brown, Cate and the State of California filed a motion to dismiss for failure to state a claim. On August 22, 2014, Defendants Igbinosa and Winslow filed a notice of joinder in the motion to dismiss, a separate motion to dismiss and a request for judicial notice. Plaintiff did not file an opposition to either motion.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff Selvick is a former inmate of the state correctional system that contracted Valley Fever.[2] (Id. at ¶ 7.) Plaintiff contends that Defendants were aware of the danger of contracting Valley Fever and failed to take action to protect him from the disease. (Id. at ¶¶ 9-11.) Knowing of the prevalence of Valley Fever in the soil, Defendants authorized major construction in the area, throwing the spores into the air without taking protective measures. (Id. at ¶¶ 10-11.)

Plaintiff alleges that Defendant Beard is the current Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), a position that he assumed in December 2012. (Id. at ¶ 17.) Defendant Beard is responsible for the policies and practices of the CDCR as well as the day to day operational decisions. (Id.) Defendant Beard did not take any action to protect Plaintiff. (Id.)

Defendant Brazelton is the current Warden of PVSP. (Id. at ¶ 18.) Defendant Brazelton failed to take any action to protect high risk inmates from contracting Valley Fever. (Id.)

Defendant Brown, the current Governor of California, and had the authority and means to establish or discontinue the state policies and practices including the policies that directed the housing and transfer of inmates. (Id. at ¶ 19.)

Defendant Cate oversaw the CDCR from 2008 through 2012. (Id. at ¶ 20.) Defendant Cate failed to take any action to prevent the Valley Fever epidemic or prevent Plaintiff from contracting the disease. (Id.)

Defendant Igbinosa is the Medical Director at PVSP. (Id. at ¶ 21.) Defendant Igbinosa

---

[1] Plaintiff filed a notice of voluntary dismissal against Defendant J. Clark Kelso on August 18, 2014.

[2] The Court notes that this complaint is substantially similar to that filed in Smith v. Schwartzenegger, No. 1:14-cv-00060-LJO-SAB, which is a related action. However, in this case, Plaintiff has deleted sections of the complaint without renumbering the paragraphs.

2

was aware of the risks to Plaintiff and failed to adopt or recommend policies to address the epidemic incidence rates. (Id.)

Defendant Schwarzenegger was the Governor of California from 2003 through 2011 and the Valley Fever Epidemic continued unabated through his tenure. (Id. at ¶ 26.) Defendant Schwarzenegger acknowledged that inmates were coming down with Valley Fever but took no action to address the epidemic. (Id.) Defendant Schwarzenegger had the authority to establish policies and practices that would have prevented Plaintiff from being exposed to and contracting Valley Fever. (Id.) Defendant Schwarzenegger did not take any action to protect inmates and announced that he was willing to send more inmates into harm's way. (Id.)

Plaintiff states that Coccidioidomycosis ("Valley Fever") is carried by organisms that live in the soil in certain limited geographic areas. (Compl. ¶ 4, ECF No. 1.) It has long been known as a dangerous disease caused by airborne fungal spores found in soil in certain areas of California and the Southwest. (Id. at ¶ 35.) When these spores are inhaled they may lodge in the respiratory system. (Id.) The spores transform and can invade surrounding tissue or migrate through the blood to other tissues and organs (disseminated infection). (Id.) Depending on the location, this may lead to disfiguring skin lesions, destruction of soft tissue, erosion of bones, joints, and eyes, ulcers penetrating into the pleura of the lungs, and the colonization of other organs including the brain. (Id.)

Most individuals who contract Valley Fever have no symptoms or mild to moderate flu-like symptoms. (Id. at ¶ 5.) Sixty percent of the individuals who contract Valley Fever do not show any overt symptoms of the illness. (Id. at ¶ 40.) Their immune systems are able to overcome the expose to the disease and they are thereafter immune to Valley Fever. (Id.) Most of the remaining forty percent of individuals will show symptoms of respiratory illness that may last weeks to months. (Id. at ¶ 41.)

However, in certain ethnic and racial groups, including African-Americans, Filipinos and other Asians, Hispanics, and American Indians, as well as those who are immune-compromised or immune-suppressed, the disease can rapidly progress to a disseminated form. (Id. at ¶ 5.) In the disseminated form, the disease attacks multiple organs requiring the individual to need life-

long treatment and possibly causing permanent brain damage or death. (Id. at ¶¶ 6, 42, 43.)

Once Valley Fever is established in its disseminated form there is no cure. (Id. at ¶ 45.) Disseminated disease is treated with antifungal drugs that reduce the number of infectious spores and must be taken for the remainder of the individual's life. (Id.) The disease remains in the individual and repeated debilitating relapses may be expected. (Id.) Over thirty inmates have died from exposure to Valley Fever since 2005. (Id. at ¶ 48.)

Plaintiff contends that Defendants have had notice of the risk of Valley Fever for over fifty years. (Id. at ¶¶ 48-50.) In the late 1960s employers were warned that placing workers in the endemic areas carries with it the responsibility to reduce the rate and severity of infection through dust control measures and providing a vigorous medical surveillance program. (Id. at ¶ 50.)

Between 1987 and 1997, the CDCR built eight prisons within the endemic and hyper-endemic regions of the Central Valley. (Id. at ¶ 51.) Plaintiff contends that PVSP was extraordinarily dangerous in regards to exposing inmates to Valley Fever because the soil surrounding and under PVSP is densely contaminated with Coccidioides fungus. (Id. at ¶¶ 52-54.) The prison grounds contain broad expanses of bare dirt without any vegetation which allows the spores to circulate in the air and into the buildings. (Id. at ¶ 55.)

In November 2004, Renee Kanan, Deputy Director of Health Care Services, wrote a memo to all health care managers, staff and CDCR officials regarding Valley Fever and its origin in soil. (Id. at ¶ 56.) The memo stated that Central Valley prisons are located within areas that host the fungus in the soil; Valley Fever can be lethal for people exposed to the fungus; winds and construction activity may cause the organism to be blown into the air where it could be inhaled; this may cause a percentage of individuals to catch pneumonia or disseminated disease; the risk of disseminated disease is highest in American Indians, Asians, Blacks, and immuno-compromised individuals. (Id. at ¶ 57.) Plaintiff contends this memo was and is still widely distributed within CDCR. (Id. at ¶ 58.)

Shortly after this memo was circulated PVSP began experiencing an epidemic of Valley Fever. (Id. at ¶ 59.) Infection rates at PVSP were as much as 1,000 times the rate seen in the

1 local population. (Id. at ¶ 60.) An October 27, 2006 memo described the infection rates within
2 the CDCR and the rates at PVSP had increased by more than 445% between 2001 and 2005, and
3 by over 2,500% by 2006. (Id. at ¶¶ 61-62.)

4       After the 2005 outbreak at PVSP, California Corrections Health Care Services
5 ("CCHCS") requested and received assistance from the California Department of Public Health
6 ("CDPH") in assessing and controlling cocci at PVSP. (Id. at ¶ 64.) CDPH reported that the rate
7 of Valley Fever cases at PVSP was 38 times the rate of residents of Coalinga and 600 times the
8 rate in Fresno County. (Id. at ¶ 65.) The increased rate at CDPH was reported as associated with
9 increased outdoor time, pre-existing health conditions, and African-American race. (Id.)

10       An August 2006 internal memorandum confirmed that Defendants were aware that
11 inmates were being housed in hyper-endemic locations. (Id. at ¶ 67.) During 2006 through 2010
12 the rates of Valley Fever at PVSP, ASP, Wasco State Prison ("WSP"), and North Kern State
13 Prison were significantly higher than rates in the counties in which they are located. (Id. at ¶ 68.)
14 The rapid and continued increase in Valley Fever at PVSP in 2005/2006 was attributed to new
15 construction next to the prison. (Id. at ¶ 69.) Defendants increased this risk by deciding to
16 construct a new mental hospital facility immediately adjacent to the prison. (Id. at ¶ 72.)

17       Following the start of construction, the number of Valley Fever cases increased. (Id. at ¶
18 77.) By mid-August 2006, PVSP had recognized 300 new cases of Valley Fever. (Id.) The
19 excavation and construction adjacent to the prison placed an inordinate amount of Coccidioides
20 spores into the air in and around the prison. (Id. at ¶ 78.)

21       In June 2007, CCHCS issued recommendations, including landscaping with ground cover
22 and concrete, diverting and relocating inmates at high risk, and not expanding prison beds in the
23 hyper-endemic areas, especially at PVSP. (Id. at ¶ 76.)

24       In November 2007, prison officials issued a formal exclusion policy for inmates with
25 certain medical conditions, but did not include inmates at high risk due to their ethnicity or race.
26 (Id. at ¶ 77.)

27       After a federal health agency project was terminated, in December 2009 officials from
28 the Centers for Disease Control and National Institute for Occupational Safety and Health wrote

letters to the CDCR stating that African-American, Asian or Filipino, or immuno-compromised individuals were at a greater risk of developing disseminated infection. (Id. at ¶ 80.)

From 2007 through 2010, the rate of infection at PVSP was six times higher than the rate of infection at the adjacent state mental health facility which was built in 2005. (Id. at ¶ 78.)

Defendants declined to increase ground cover plantings as recommended by the CDH finding it too costly to implement. (Id. at 188.) In 2011, CDCR sprayed a temporary sealant with a two year life span on some soils at PVSP. (Id.) During an October 2011 press conference, Defendant Schwarzenegger announced that the State's policy and practice of transferring prisoners to PVSP would continue unabated despite the risk of Valley Fever. (Id. at ¶ 81.) In April 2012, a retrospective study found that the infection rate at PVSP was approximately 7 out of every 100. (Id. at ¶ 63.) That same month CCHCS released a report finding that CDCR had done nothing between 2006 and 2010 that had any effect on cocci incidence rates at PVSP and ASP. (Id. at ¶¶ 120, 121.) The report indicated that Valley Fever incidence rates were drastically elevated and that African-Americans in particular were at an increased rate of contracting Valley Fever in its disseminated form. (Id. at ¶122.) The report found that PVSP had extensive areas of un-stabilized soil on its grounds. (Id. at ¶123.) Over 80 CDCR facility staff members have contracted Valley Fever and there has been at least one correctional officer who died from the disease. (Id. at ¶ 125.)

In March 2013, CDCR installed dust control devices, such as air filters and door sweeps, in some prison facilities. (Id. at ¶ 182.) Defendants also posted warning signs about the symptoms of Valley Fever and provided some educational materials and training to prison staff. (Id. at ¶ 183.)

Plaintiff Selvick was convicted of a third strike and sentenced to 25 years to life on May 27, 1999. (Id. at ¶ 222.) Plaintiff was transferred to PVSP in 2000 and was housed there during the construction of the adjacent state mental health facility. (Id. at ¶ 270.) After the construction started, Plaintiff became sick and made numerous trips to the medical facility. (Id.) Plaintiff was diagnosed with flu, but was not allowed to see a doctor. (Id.) After filing a grievance, Plaintiff was sent to the medical department and was transferred to Mercy Hospital in

Bakersfield. (Id.) Plaintiff was returned to PVSP after 48 hours and the medications he was receiving were removed. (Id.) Plaintiff's symptoms returned. (Id.)

In 2008, Plaintiff requested to be transferred to ISP. (Id. at ¶ 270.) When Plaintiff was transferred to ISP, he had already contracted Valley Fever in Central California. (Id. at ¶ 225.) In 2011, Plaintiff sought to override a transfer to WSP. (Id.) The Chief Medical Officer denied his request because once Valley Fever is dormant inside the lungs, it does not reactivate. (Id. at ¶ 270.) Plaintiff was transferred to WSP in March 2012. (Id. at ¶¶ 29, 226, 270.) Plaintiff became sick with Valley Fever by November 2012 and the previous medication regimen was reinstated. (Id. at ¶ 270.) In March 2013, Plaintiff was released. (Id.) Plaintiff continues to suffer from the symptoms of Valley Fever and in January 2014 was hospitalized for a breakdown of all his symptoms related to Valley Fever. (Id.)

Plaintiff alleges that the exposure to dangerous conditions subjected him to cruel and unusual punishment and exhibited deliberate indifference to serious medical needs in violation of the Eighth Amendment and brings a claim for premises liability under California law. (Id. at pp. 42-45.[3]) Plaintiff seeks monetary damages. (Id. at 46-47.)

### III.

### APPLICABLE LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

[3] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

conclusory statements, do not suffice." Id. at 678.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Starr, 652 F.3d at 1216.

## III.

## DISCUSSION

Defendants State of California, Brown, Beard, and Cate move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint does not state a claim because 1) Plaintiff's claim that he contracted Valley Fever is barred by the statute of limitations; 2) the complaint does not allege facts to show any Defendant was personally involved in violating Plaintiff's federal rights; and 3) Defendants are entitled to qualified immunity. (Defs. State of California, Brown, Beard, and Cate's Notice of Motion and Motion to Dismiss 1, ECF No. 25.) Defendant State of California further moves to dismiss on the ground that the complaint fails to state a claim under California Government Code because 1) the State of California is immune from suit in federal court; 2) the State is entitled to immunity for injury to a prisoner; and 3) Plaintiff failed to plead compliance with the Government Claims Act. (Id. at 2.) Defendants Igbinosa and Winslow join the motion to dismiss. (Defs. F. Igbinosa, M.D. and D. Winslow, M.D. Joinder to Defendants State of California, Brown, Beard, and Cate's Motion to Dismiss 2, ECF No. 32.)

Defendants Igbinosa and Winslow move to dismiss the action on the grounds that 1) Plaintiff's claim is barred by the statute of limitations; 2) Defendants are entitled to qualified immunity; and 3) the complaint fails to show that Defendants Igbinosa or Winslow violated the constitution. (Defs. Igbinosa and Winslow's Notice of Motion and Motion to Dismiss Pl.'s

Compl. 3, ECF No. 30.)

### A.     Statute of Limitations

Plaintiff alleges that he was housed at Pleasant Valley State Prison and became sick after the construction of the adjacent mental health facility began. In 2008, Plaintiff requested a transfer and was transferred to ISP. (ECF No. 1 at ¶ 270.) Defendants contend that Plaintiff's claims regarding his initial contraction of Valley Fever are barred because he was aware of his claim more than four years prior to filing his complaint. (ECF No. 25-1 at 4-5.)

Federal law determines when a claim accrues, and "under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008) (quoting Two Rivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999). In the absence of a specific statute of limitations, federal courts should apply the forum state's statute of limitations for personal injury actions. Lukovsky, 535 F.3d at 1048; Jones v. Blanas, 393 F.3d 918, 927 (2004); Fink, 192 F.3d at 914. As of January 1, 2003, California's statute of limitations for personal injury actions requires that the claim be filed within 2 years. Cal. Code Civ. Proc. § 335.1; Abreu v. Ramirez, 284 F.Supp.2d 1250, 1256 (C.D. Cal. 2003); Jones, 393 F.3d at 927.

In actions where the federal court borrows the state statute of limitation, the court should also borrow all applicable provisions for tolling the limitations period found in state law. See Hardin v. Straub, 490 U.S. 536, 539 (1989). On January 1, 2003, pursuant to California Code of Civil Procedure section 352.1, a two-year limit on tolling is imposed on prisoners. Section 352.1 provides, in pertinent part, as follows:

> (a)  If a person entitled to bring an action . . . is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Therefore, an incarcerated plaintiff has four years from the date that the cause of action accrued in which to file suit, if the cause of action accrued while the plaintiff was incarcerated.

///

9

### 1. Housing Plaintiff at PVSP

Plaintiff claims that Defendants were deliberately indifferent by housing him at PVSP during construction on the adjacent mental health facility and he contracted Valley Fever. In this instance, it is clear that Plaintiff was aware that he had contracted Valley Fever prior to his request to be transferred from PVSP in 2008.

Plaintiff was housed at PVSP in 2000. (ECF No. 1 at ¶ 270.) While Plaintiff fails to provide the date that he became sick, he states after the construction started at the adjacent mental health facility in 2005 he became very ill with flu like symptoms. (Id. at 69, 270.) Therefore, the statute of limitations in this action began to run prior to his request for a transfer to ISP in 2008. Plaintiff did not file the instant action until March 11, 2014 well more than a year after the statute of limitations had expired.[4] The Court finds that Plaintiff's claim of deliberate indifference due to housing him at PVSP where he contracted Valley Fever is barred by the statute of limitations.

### 2. Dr. Igbinosa

Plaintiff also brings this action against Defendant Igbinosa who is the medical director at PVSP. Plaintiff's claims based on his contraction of Valley Fever are barred by the statute of limitations as discussed supra. Additionally, to the extent that Plaintiff is attempting to raise claims against Defendant Igbinosa regarding his being housed at PVSP or inadequate medical care after he contracted Valley Fever the same analysis applies. Plaintiff's claims against Defendant Igbinosa would have accrued during the time period that he was housed at PVSP, prior to his transfer to ISP in 2008. For the same reasons discussed supra at III.A.1.a., Plaintiff's claims against Defendant Igbinosa are barred by the statute of limitations.

---

[4] Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court is aware that an inmate is entitled to equitable tolling while he exhausts his administrative remedies. Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005). In this instance, Plaintiff, although represented by counsel, did not file an opposition to the motion and has not raised equitable tolling to extend the statute of limitations. Further, given the allegations in the complaint, that Plaintiff became sick after the construction began in 2005, equitable tolling would not extend the limitations period to March 11, 2014.

The Court recommends that Plaintiff's claims related to his initial contraction of Valley Fever and claims against Defendant Igbinosa be dismissed as barred by the statute of limitations.[5]

### B. Eleventh Amendment Immunity

Defendants move to dismiss on the ground that the State of California is immune from suit in federal court. "The Eleventh Amendment bars suits for money damages in federal court against a state [and] its agencies . . ." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007), "regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity," Yakama Indian Nation v. State of Washington, 176 F.3d 1241, 1245 (9th Cir. 1999); see also Seminole Tribe of Fla. v. Florida, 116 S. Ct. 1114, 1122 (1996); Hibbs v. Dep't of Human Resources, 273 F.3d 844, 849 (9th Cir. 2001) (citations omitted). State agencies and state officers who act on behalf of the State are also entitled to immunity. Natural Resources Defense Council v. California Dept. of Transportation, 96 F.3d 420, 422 (9th Cir. 1996). The Department of Prisons is a state agency entitled to Eleventh Amendment Immunity. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff brings this action against the State of California, PVSP, and ISP seeking monetary damages. PVSP and ISP are part of the California Department of Corrections and Rehabilitation and, as such, are entitled to Eleventh Amendment immunity from suit. Accordingly, the Court recommends that Defendants State of California, PVSP, and ISP be dismissed from this action as they are entitled to immunity from suit in federal court under the Eleventh Amendment.

### C. Deliberate Indifference

Plaintiff alleges that officials were deliberately indifferent by transferring him to "endemic or hyper-endemic prisons." (ECF No. 1 at ¶¶ 261, 263.) As discussed supra, Plaintiff's claims regarding his housing at PVSP are barred by the statute of limitations.

---

[5] Since the claim that Defendants were deliberately indifferent by exposing Plaintiff to Valley Fever is barred by the statute of limitations, the Court declines to address Defendants argument that they are entitled to qualified immunity.

However, Plaintiff also states that in 2011 a notice was posted at ISP that inmates were to be transferred to WSP. (Id. at ¶ 270.) Plaintiff sought to receive an "override" which was denied by the chief medical officer. (Id.) Plaintiff was transferred to WSP in March 2012 and became sick with Valley Fever by November 2012. (Id.) Defendants contend that any relapse of Plaintiff's Valley Fever is not actionable because such relapses are a natural consequence of contracting Valley Fever.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,' " and (2) "the prison official 'acted with deliberate indifference in doing so.' " Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346. In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Although Defendants contend that Plaintiff is unable to state a claim based upon having a

relapse of Valley Fever, the Court construes Plaintiff's allegation to be that his transfer to WSP was deliberately indifferent because it caused him to have a relapse. Plaintiff alleges that after he contracted Valley Fever he was rehoused in the endemic area at WSP and his Valley Fever symptoms returned. Although Plaintiff's relapse by itself may not state a claim for deliberate indifference, transferring him back into the endemic area knowing that being exposed to Valley Fever would cause a relapse could state a cognizable claim.

However, the complaint is devoid of any allegations that Plaintiff was at a substantial risk of harm by being transferred to WSP, or that any named defendant was aware of any substantial risk of harm by the transfer and failed to respond. For these reasons, Plaintiff fails to state a claim for deliberate indifference based upon his transfer to WSP.

**D. Venue**

To the extent that Plaintiff is attempting to raise claims regarding the denial by officials at ISP of his request to stop a transfer to WSP, Plaintiff is advised that those claims are not properly raised in this district unless they satisfy the federal joinder requirements. The federal venue statute requires that a civil action, other than one based on diversity jurisdiction, be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).

ISP is located in Blythe, California. See Ironwood State Prison website located at http://www.cdcr.ca.gov/Facilities_Locator/ISP.html. Blythe is located in Riverside County. See Map of California's Correctional and Rehabilitation Institutions located at http://www.cdcr.ca.gov/map/. Jurisdiction for Riverside County is in the Eastern Division of the Central District of California. See http://www.cacd.uscourts.gov/jurors/jurisdiction. Plaintiff's claims regarding ISP's denial of his request to stop his transfer to WSP are properly venued in the Central District of California.

///

### E. Official Capacity Claims

Defendants move to dismiss the complaint on the ground that there is no supervisory liability in Section 1983 actions. In this instance, Plaintiff is alleging a claim for policies and practices of transferring inmates into an area where they are exposed to Valley Fever.

A suit brought against prison officials in their official capacity is generally equivalent to a suit against the prison itself. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986). Therefore, prison officials may be held liable if "'policy or custom' . . . played a part in the violation of federal law." McRorie, 795 F.2d at 783 (quoting Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985). The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205(1989); see Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).

While Plaintiff contends that Defendants had a policy of transferring inmates into the endemic region subjecting them to the risk of Valley Fever, Plaintiff had already contracted Valley Fever prior to being transferred to WSP. Therefore, the risk alleged, contracting Valley Fever, had occurred prior to his transfer to WSP.

To state a claim in this instance, Plaintiff must show that the policy of housing inmates in the endemic area was deliberately indifferent by subjecting him to a substantial risk of harm. To the extent that Plaintiff could potentially state a claim based on the policy of housing inmates in the endemic area, he has failed to show that he was at a risk of substantial harm by the policy in place when he was transferred to WSP. The Court recommends the official capacity claims based on the policy and custom of housing inmates in the endemic area be dismissed for failure to state a claim.

### F. State Law Claims

Plaintiff alleges a claim for premises liability against the State of California. Defendants move to dismiss the claim on the alternate grounds that Plaintiff did not comply with the

14

California Tort Claims Act and the State is immune from liability under California Government Code section 835.

### 1. California Tort Claims Act

The California Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 90 P.3d 116, 119 (Cal. 2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6; Bodde, 90 P.3d at 123. "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a complaint to general demurrer for failure to state a cause of action." Bodde, 90 P.3d at 120.

In this instance, Plaintiff does not allege that he presented a claim in compliance with the Act. Therefore, Plaintiff's complaint fails to state a cognizable claim under California law.

### 2. Premises Liability

Additionally, except for limited circumstances not raised here, a public entity is not liable for injury to any prisoner resulting from the dangerous condition of public property. Cal. Gov. Code § 844.6(a)(2) and (c); Hart v. Orange County, 254 Cal.App.2d 302, 306 (1967). " 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Cal. Gov. Code § 830(a).

There is no tort liability for damages sustained as a result of conditions that are common to all inmates and simply represent a reasonable application of policy determinations by the persons responsible for administering the institutions. Badiggo v. County of Ventura, 270 Cal.App.3d 357, 360 (1989). By implementing this statute, the California Legislature intended

1 for public entities to be immune from claims by prisoners for the dangerous condition of public
2 property. Badiggo, 270 Cal.App.3d at 362.

3 Since Plaintiff was a prisoner, the State of California is immune from liability for
4 Plaintiff's claim that he was subjected to a dangerous condition of public property.

### G. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires,'" Fed. R. Civ. P. 15(a), and "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect," Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted).

In this action, an order issued requiring Plaintiff to respond to an order to show cause within fourteen days of August 21, 2014. (ECF No. 28.) Plaintiff did not file a response or otherwise respond to the order to show cause. Similarly, Plaintiff did not file an opposition to either of the motions to dismiss filed in this action. Based upon Plaintiff's failure to prosecute this action, the Court recommends that this action should be dismissed without leave to amend absent Plaintiff seeking such leave in any objections filed.

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants Jeffery A. Beard, Edmund G. Brown, Matthew Cate, State of California, Igbinosa and Winslow's motion to dismiss be GRANTED as follows:

   a. Plaintiff's claims based upon his contraction of Valley Fever while housed at Pleasant Valley State Prison be DISMISSED without leave to amend as barred by the statute of limitations;

   b. Plaintiff's claims against Defendant Igbinosa be DISMISSED as barred by the statute of limitations;

   c. Defendants State of California, Pleasant Valley State Prison, and Ironwood State Prison be DISMISSED from this action without leave to amend on the grounds that they are entitled to Eleventh Amendment immunity;

  d. Plaintiff's claims based upon his transfer to Wasco State Prison be DISMISSED for failure to state a claim under section 1983;

  e. Plaintiff's official capacity claims based on the policy and custom of housing inmates in the endemic area be dismissed for failure to state a claim under section 1983; and

  f. Plaintiff's state law claims be dismissed for failure to state a claim.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **October 2, 2014**

UNITED STATES MAGISTRATE JUDGE